The next case for today is 2023-50040, United States v. Richard Schorovsky. You may proceed. May it please the Court, Ms. Raba, I'd like to begin by addressing the following question. Is this panel precluded from considering on the merits and argument? Can you move the microphone and be a little louder? I know you can. Is this panel precluded from considering on the merits an argument made in this case as to why generic burglary is narrower than Texas burglary simply because a prior en banc opinion has said that Texas burglary is generic burglary, even though the argument made in this case was never raised in the case addressed by the en banc court? This question has to do with my third issue, where I argued that because the Texas burglary statute is indivisible and because it covers more conduct than generic burglary, because it applies to structures used only for storage, not for human habitation, and the case I cite is United States v. Stitt, that's a 2018 Supreme Court case. There are at least two Fifth Circuit cases that say that the rule of orderliness applies even when prior arguments were never addressed. One is 951. Are you getting blowback on this? It's a little bit of feedback, but it's better to have it loud. It's not your fault. This is better. If it doesn't bother you, I'd like to do this. There are two prior Fifth Circuit opinions that basically say, hey, if the en banc court said it, even though the argument was never raised, we're precluded from considering it. One is 951F3-632. The other one is 885F3-10. Why doesn't that answer your question? Huh? Why doesn't that answer your question? Because I'm going to tell you why. Okay. Okay. We're getting to that. Common suspense. We're getting to that. So I'm going to give you my reasons for why it doesn't answer the question. Reason number one, this is from the U.S. Supreme Court, an opinion is not binding precedent on an issue never squarely raised. So says the Supreme Court in Breck v. Abrahamson 507 U.S. 619. The second reason, and this is one I want to spend more time on, this case involves an exception to the rule of orderliness, in my opinion. And that exception is when there's an intervening Supreme Court decision. Fifth Circuit precedent is implicitly overruled if a subsequent Supreme Court opinion establishes a rule of law inconsistent with that precedent. That's 623F3-222. Is that applicable here? Beg your pardon? Is that applicable here? Yes, it is. I'm going to tell you why. What Supreme Court case? United States v. Stitt. Here's why. Wait, let me see if I understand. You're saying that our en banc decision in Herald 2019 was implicitly overruled by what? I am, because- By what? By the ... Okay. The arguments addressed in all five ... Well, the last two Herald cases were arguments that were raised for the last time in 2017. Mr. Herald could not have raised the argument that I raised, because Stitt didn't exist. The 2019 Herald case was simply readdressing two arguments that Mr. Herald made earlier. One was ... Okay. The first case that went up- I guess I'm interested in your argument, but I thought you were saying that one of our en banc cases was implicitly overruled by the Supreme Court. I was just curious about that. Okay. I'm going to say it was functionally overruled. Okay? Well, functionally, implicitly. I mean, the rule in our court, and believe me, I know it, is that if we have an on-point case and the Supreme Court comes along and decides something that might maybe weaken the foundations of the case, maybe it's a little inconsistent with the case, but it doesn't just flat out overrule it or flat out just overturn it. We still have to follow our precedent, right? Well, I'm going to make my argument, it's obviously you have to do what you have to do. Well, I mean, that's the thing. We have to do what we have to do. Oh, okay. I mean, I wrote an en banc opinion for this court called Vargas where we're asking, okay, did the Supreme Court overturn it? Well, it might have weakened the foundations for one of our cases, but unless it just flat out overrules it or just takes out the major premise of the case, we still have to ... Okay. So, you're saying Herald instead. Okay. The main foundations of Herald were this. His arguments were the fact that the Texas burglary statute covers things like ... Let's see. What did it use? Okay. In Mathis, the court said, this is one of the times it came back, generic burglary applies to building or other structure. And Mr. Mathis was convicted under a statute that reached land, water, or air vehicle. Okay. So, that was one of his arguments. That was one. The other one was, and this had to do with whether the Texas burglary statute is divisible or indivisible. As I'm sure this court knows, the Texas burglary statute criminalizes forming an intent and then entering and committing theft or entering and then committing theft. Okay. And so, at some point in time, and this is in 2017, the 5th Circuit said those are separate. This is in 685 F Appendix 302. This is the second or third time Mr. Herald was before the court. That forming the intent to commit theft was separate from entering. So, they say, okay, the statute's indivisible. So, he files petition for re-hearing. The first en banc court, 883 F 3rd 517. This is, again, this is February 20th, 2018. This is nine months before stint. This is the last argument that Mr. Herald makes. This is pre-stint. Okay. And he says, okay, at that point, the first en banc court rules that the Texas burglary statute is indivisible. They've changed their mind. It was divisible. Now, it's not. So, then it goes up to the Supreme Court, and it's remanded based on quarrels for the United States. Quarrels held, it doesn't matter whether the defendant forms the intent to commit theft before you enter or after you enter. It's all generic burglary. Okay. So, now it's 2019. We're at the last en banc decision, 941 F 3rd. But, again, the only arguments are the arguments that were raised in 2017. Right. But, so, you're asking, maybe you're asking, that we need to go en banc and decide this new twist on Herald that you have come up with post-death, but we can't do that as a panel because of the rules that you cited to us yourself just at the very beginning of your argument. Okay. Well, maybe that is what I'm asking. I mean, and obviously, I mean, obviously, it depends on how this goes. That would be, that might be the thing to do, but at this point, I'm arguing that Stitt only addressed arguments that were made pre-Stitt. The fact that the court in 941 F 3rd affirmed it based on those prior arguments, I'm arguing, doesn't keep it out of the realm of being considered a functionally intervening decision. So, Stitt was, Stitt was 2018, in 2022, so barely a year ago, we said, quote, any Section 30.02a conviction qualifies as a predicate under the ACCA, unquote. And I'm sure I quoted that in the brief. I'm not, that's maybe the Wallace case, I'm not sure. Clark. Clark, okay. Again, those are all, those are all stair-stepped on previous opinions, and they're all stair-stepped on 941, which only addressed arguments made from 2017. Mr. Harrell could never have made the argument that I'm making. Okay, so, and I'll try to be brief. I can tell this is an uphill deal here, but the text, okay. It's pretty vertical. I mean, we're, we're a three-judge panel bound by prior panel decisions of our court, and if we said barely a year ago that any 30.02a conviction qualifies as a predicate, I mean, any seems pretty categorical. Okay. Well, maybe I should move on, so I will. I want to point out two other things, and this is a, this is a recent Fifth Circuit case from 2023 that suggests to me, in my little world, that the door might still be open to show, if I can show a realistic probability that the burglary statute is broader than the generic definition, and this is from United States v. Kerstetter, it's 824437. This is from September 25th of last year, and this is language from page 440. It has been settled that convictions for Texas burglary qualify as violent felonies under the ACCA. That's what you all have said. The test we have applied is that a defendant needs to show, as present tense, a realistic probability, not a theoretical probability. And in my principal brief, I cited 10 burglary of a building cases involving storage buildings not used for over-accommodation, and I have four new ones. They're all unpublished. 223 Texap Alexis 8609, 2023 Texap Alexis 3582, 2021 Texap Lexus 5033, and 2021 Texap Lexus 1833. I'd also point out that two other circuits post-Stick have recognized the argument that I'm making here, and I haven't done research to know whether in so doing they were going against prior precedent in that circuit. When you say recognized, you mean accepted? I don't know if I know the difference. Here's the language. This is from Sixth Circuit, Greer v. United States, 938F3766. We note that a burglary statute is broader than generic burglary if it does not limit its coverage to even remotely residential uses, citing Sticks. This is from the Eighth Circuit, 2019, Brown v. United States, 929F3554. Some of the locations contemplated by the statute, such as freight cars, booths, fishing boats, are so non-typical that they fall outside the scope of generic burglary. And again, they cite the Sticks. All right. The second thing I would like to bring to the Court's attention is a recent Fifth Circuit case where, and again, I'm on a new issue now. We're moving on. Issue number one, this has to do with whether or not the Shepard documents substantiated the application of the ACCA predicates. This is United States v. Alka-Kanning. I'm mispronouncing that. August 17, 2023. This is interesting. The government interprets this case differently than I do. The government cites this case in its Rule 28 letter. Of course, the government says, this case supports the government's position that the indictments and judgments for Sharovsky's previous robbery and burglary convictions were Shepard-approved documents. And I'll stop there. I read the case very differently. This is language from the opinion. Here are the Shepard-approved documents in the record. Show four judgments and indictments for the crime of burglary of habitation in Tarrant County. The dates are April 15, 2012, April 16, 2012, May 12, 2012, and May 12, 2012. In our case, there's two. And depending if you go by the indictment, there's two days apart. So this is more disparate than mine. It says, none of the judgments or indictments list the time of the offenses. Further locations are not definitely given, though four different victims are initial. We find these limited Shepard-approved documents do not conclusively show that the predicate offenses occurred on different occasions. They occurred on different dates. But no other details are given as to whether the burglaries happened in a single night. And they're quoting language here from Wooden. Further, different victims imply different locations, but no detail is given as to the proximity of these victims to one another. Moreover, no information is given as to whether these events were intertwined with the others or involved the same scheme, actuated by the same motive, and accomplished by the same means. Again, quoting from Wooden. And I'll just, this is the last sentence. In sum, the Shepard documents do not conclusively show that Alka County's predicate offense occurred on three separate occasions, thus the district court error affected a special right. Again, this was plain error review. Okay, just about out of time. I'm not, I didn't choose to address the ACC fact-finding by the district court. I'm sure this court is aware that the Supreme Court is going to hear arguments on a case like that next month. So, whatever they decide, I guess, will determine what we do next. What about the plea? Are you real, are you and your client arguing here today that you really want a do-over, given the fact that the risk of that is so high? Your client cannot, if they got a do-over, they couldn't even get what they got, under the best case scenario, if they were convicted. So, how is that, is your client really arguing that the plea was wrong? Well, two responses. One is, and this is in the last issue in my brief, obviously, if you read the brief, this guy's been in trouble since he was a little kid. He went to the boys' ranch when he was 12 years old, 5 years, he's been in trouble all his life. And he says, every time I go, they max me out. Every time they go, they max me out. And he just said, I'm tired of it. But was he actually, when he's complaining, there's a question of whether he factually is raising that he doesn't want to plead. There's that question. But I'm asking you as a legal matter. I'm telling you that he would be happy to be a not-ACCA convict. He would be happy for his advisory range to be 37 to 42, or whatever it is, without that. And that's what he was told. Right, he was told the wrong thing by the magistrate judge. He was absolutely told the wrong thing by the magistrate judge. But that's not what we're asking you here. I understand. What you get if you're right on that argument, and that's a big... He's 41 years old. Right now, he's looking at 15 with what he's got. Now, given his, and I can't answer this from his point, because I don't know. But if I'm 41 years old, is there a difference between 15 and life? I don't know the answer to that. Also, you could make your remand order. You could craft it where they couldn't consider the ACCA predicate, if you wanted to, I think. I'm way out of time. Okay, thank you. You've answered our question. Thank you. Good morning. May it please the court. My name is Angela Raba. I represent the government in this appeal. And I'd like to first begin by addressing the burglary argument that the court is absolutely bound by its precedent in that case. And just quickly, in terms of Mr. Kuchera's argument that he's raised a new issue under the Stitt case, I think if you look at the Stitt case, and if you're reading his appellant's brief, it's very clear that there's a misunderstanding of what the Stitt case did. In Mr. Kuchera's brief, he says that under Stitt, generic burglary must include a structure or vehicle that has been adapted or is commonly used for overnight accommodations. That is not what Stitt said. Under generic burglary, the definition of generic burglary, which was set forth in Taylor back in 1990, is an unlawful or unprivileged entry into or remaining in a building or other structure with intent to commit a crime. Under Stitt, they weren't saying that you have to have overnight accommodations to meet the generic burglary. It was saying that burglary of a structure or vehicle that is adapted, where a vehicle is adapted for overnight accommodations, falls within generic burglary. They weren't saying that all generic burglaries must use accommodations, overnight accommodations. That's just my clarification there. From the government's perspective, this court is absolutely bound by its decision in Herald. My next point that I'd like to address is the Shepard documents in this case. The appellant's argument is that the Shepard documents weren't sufficient to show that the offenses were committed on separate occasions. The Shepard documents in this case were the indictments and the judgments. Under the Al-Qaqani case, it's very clear under Al-Qaqani that the court said that judgments and indictments are Shepard documents. Al-Qaqani looked at those documents and looked at the dates in those documents, in which case the dates in Al-Qaqani were April 15, April 16, and two of the offenses were on the same day, May the 12th. What Al-Qaqani was saying is that those indictments weren't sufficient to show that they were different because there was nothing in there to say what time it occurred. Technically, April 15 and April 16 could have been one before midnight, one after midnight. It could have been a consistent episode. The ones on the same day, they didn't show that it wasn't a consistent episode either. The distinction here is that we have the indictments and the judgments show there was an aggravated robbery on January 26, 2012, and there was another robbery on January 28. You're better off than the case in Al-Qaqani. Absolutely. This is an easier case than the one we already decided in the government's favor. Is that what you're saying? Yes, because in our case, Al-Qaqani recognized that most courts have said that there's separate occasions if they were committed on at least one day apart. Because the dates aren't adjacent. Exactly. Whereas in Al-Qaqani, both dates are adjacent. Yes, and in our case, the dates are not adjacent. The district court properly found that the offenses were covered on separate occasions. Very briefly, I would like to address the Rule 11 argument as this court has noted. I think this is a plain error case. He did not object below to the Rule 11 admonitions. What he objected to is he didn't want the armed career criminal enhancement. That's not the same thing as objecting to, hey, you advised me incorrectly. So I think we're under plain error here in this case. But you do, counsel, you do concede, or do you concede the first two prongs of the plain error analysis? I think that, yes, magistrate judge made an error. He did not advise him of the possible minimum mandatory and then the change in the mandate. So if you're going to prevail on this, you'll need to prevail on prong three, right? Yes, prong three as well as prong four. And under prong three, he has to show that basically there is a reasonable probability that but for the error, he would not have entered plea. Well, in this case, nowhere from the time he realized that he was being enhanced to the time of sentencing did he ever tell the court, I want to withdraw my plea. I don't want to go forward with my plea. He basically just continued to object to the application of the enhancement. He talked more about that than, we see lots of transcripts. He really was quite surprised and quite, and it's, one could perhaps interpret it that he wanted to withdraw it. But we, because it's so egregious compared to what it would have been. You know, he thought he was looking at this minor thing and then he gets hit. Right. You know, blindsided with the PSR. Excuse me for interrupting, Judge. No, you go ahead. But I believe the record does show that he was very familiar with the Armed Career Criminal Act. He told the magistrate judge, I follow the Armed Career Criminal Act. Well, you can't expect him to contradict no better than the magistrate judge. And that's not our argument, Judge. The argument basically is that he has not shown that if he had known or if he had been advised of the enhanced penalties that he wouldn't have pleaded guilty. That's what we were asking him about earlier. Because in this case, and the court must also, you're allowed to look at the entire record. And in this case, he wouldn't have been in a better position if he had gone to trial. Because if you look at the factual basis, the evidence is overwhelming. And it is true that if he hadn't pleaded guilty, his guideline sentence range would have been significantly higher. That is correct, Your Honor. He gained a benefit by pleading guilty. And the benefit was, I get acceptance of responsibility. It lowered his guideline range to a 30 with his criminal history of Category 4. It placed him at a, I believe it was, I can't remember, but it was lower than the 15-year maximum minimum. But if he had pled guilt, I mean, if he had gone to trial, he wouldn't have got the acceptance points. That would have placed him at 33 with a Category 4, which would have been higher than the mandatory minimum. So he was exposed to higher than the mandatory minimum just by calculation of the guidelines. So the bottom line, the government's position is he has not proved either the third prong. And the court, for purposes of the fourth prong, he was advised of getting 15 years, that he could get 15 years. And that's what he got. He didn't get more than what he was advised of. So that's a point relative to the fourth prong, why he did not meet the standard of review for the Rule 11 claim. I believe most of the other arguments are addressed in the brief. And there's foreclosed, the Apprendi issue that he raises is also foreclosed in this court under the Valencia and Kerstetter cases. So this court, again, is bound by that as well. So his argument that Apprendi was violated when the district court made the findings that his robberies and burglaries were committed on different occasions, that is a foreclosed issue. And with that, if there are no further questions, I give back my time. Thank you very much. Thank you. Thank you. I just want to address briefly the issue of the fact that Mr. Sharofsky didn't say anything at the plea hearing about objecting. There was nothing in front of him that would have given him a basis to object. Everything the magistrate judge told him was, you're going to get, you know, even though the factual basis included the three priors, he was never put on notice of that. The first time he objected, the first time he became aware of it. And I haven't cited cases in the brief. I could cite those if I had a little time. There are plenty of cases out there that say if the defendant objects himself, that counts as an objection, even though his trial counsel may not have objected. And I couldn't tell exactly from your tone of voice, but it sounded a little bit by your tone of voice, that he couldn't have been more adamant about the fact that he was dissatisfied with, he didn't know this when he pled guilty. And I think that's significant. I think that's significant. But at the same time, if Prompt 3 does apply, he has to show that he would have withdrawn his plea. You know, and that's why we were asking you even today, you can't say that he wants to withdraw his plea even today. He never used those words. He never used those words outside the record here. He and I couldn't, you know, head letters back and forth. It's a big risk. It's a big risk. We have let people be, and we have said that alone does not mean that you can't satisfy Prompt 3 in a proper case. But for us to find it where it's somewhat absent, when it's such a negative and big risk, seems difficult. Well, my shoulders are not big enough to answer that question on his behalf. I don't know what he's been through. I can read about it. The fact that he might just want to win just to win, even though in the big picture he loses, I think is a legitimate possibility, but I can't say that for him. And unless there's any other questions, I yield back the rest of my time as well. Thank you. Thank you. We know, Mr. Katara, as you have done many times, that you are court-appointed, and we appreciate your service to the court. And we also appreciate Ms. Brava's argument on behalf of the United States. Thank you so much. This case is submitted.